# EXHIBIT A

| Attorney or Party without Attorney: | | | | For Court Use Only |
|---|---|---|---|---|
| ANNE MARIE MURPHY ESQ., Bar #202540<br>COTCHETT, PITRE & MCCARTHY<br>840 MALCOLM ROAD, STE. 200<br>BURLINGAME, CA  94010<br>Telephone No: 650-697-6000          FAX No: 650-697-0577 | | | | |

*Attorney for:* Plaintiff

*Ref. No. or File No.:* ALICE LIN #3579

**Electronically FILED by Superior Court of California, County of Los Angeles 2/21/2024 4:09 AM David W. Slayton, Executive Officer/Clerk of Court, By M. Saxon, Deputy Clerk**

*Insert name of Court, and Judicial District and Branch Court:*
Superior Court Of California, County Of Los Angeles, Central District

*Plaintiff:* ALICE LIN, INDIVIDUALLY

*Defendant:* JPMORGAN CHASE BANK, N.A.; ET AL

| PROOF OF SERVICE<br>SUMMONS & COMPLAINT | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>24STCV02193 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS (AND) COMPLAINT; CIVIL CASE COVER SHEET; CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION;; NOTICE OF CASE ASSIGNMENT-UNLIMITED CIVIL CASE; ADR INFORMATION PACKAGE.

3. a. *Party served:*  CHERYL McMURRAY, AN INDIVIDUAL
   b. *Person served:*  party in item 3.a., Caucasian, Female, 50-60 Years Old, Salt/Pepper Hair, Wearing Glasses Eyes, 5 Feet 4 Inches, 130 Pounds

4. *Address where the party was served:*  1190 BEVERLY WAY
   ALTADENA, CA  91001

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Wed., Feb. 07, 2024 (2) at: 6:45PM

6. *The "Notice to the Person Served" (on the Summons) was completed as follows:*
   a. as an individual defendant

7. *Person Who Served Papers:*
   a. JEFFREY BUAN
   b. **A & A LEGAL SERVICE, Inc.**
      880 MITTEN ROAD, SUITE 102
      BURLINGAME, CA  94010
   c. (650) 697-9431, FAX (650) 697-4640

   Recoverable Cost Per CCP 1033.5(a)(4)(B)
   d. *The Fee for Service was:*
   e. I am: (3) registered California process server
      *(i)*   Independent Contractor
      *(ii)*  *Registration No.:*   2016225465
      *(iii)* *County:*           Los Angeles

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

   *Date:  Fri, Feb. 16, 2024*

                                                    (JEFFREY  BUAN)



**CT Corporation**
**Service of Process Notification**
02/06/2024
CT Log Number 545699729

## Service of Process Transmittal Summary

**TO:**       Tonya Anderson
              JPMorgan Chase Bank, N.A.
              700 KANSAS LN
              MONROE, LA 71203-4774

**RE:**       **Process Served in Ohio**

**FOR:**      JPMorgan Chase Bank, National Association  (Cross Ref Name)  (Domestic State: N/A)
              JPMorgan Chase Bank, N.A. (True Name)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | ALICE LIN, individually vs. JPMORGAN CHASE BANK, N.A. |
| **CASE #:** | 24STCV02193 |
| **PROCESS SERVED ON:** | C T Corporation System, Columbus, OH |
| **DATE/METHOD OF SERVICE:** | By Process Server on 02/06/2024 at 14:54 |
| **JURISDICTION SERVED:** | Ohio |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 02/07/2024, Expected Purge Date: 03/08/2024 |
| | Image SOP |
| | Email Notification,  Tonya Anderson  tonya.a.anderson@jpmchase.com |
| | Email Notification,  Yolanda Adams  yolanda.x.adams@jpmchase.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 4400 Easton Commons Way |
| | Suite 125 |
| | Columbus, OH 43219 |
| | 877-564-7529 |
| | MajorAccountTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                           Tue, Feb 6, 2024
**Server Name:**                    Jeffrey Cremeans

| Entity Served | JPMORGAN CHASE BANK, NATIONAL ASSOCIATION |
|---|---|
| Case Number | 24STCV02193 |
| Jurisdiction | OH |

| Inserts |
|---|
|  |



**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

<table>
<tr>
<td>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
JPMORGAN CHASE BANK, N.A., a Delaware Corporation; CHERYL MCMURRAY, an individual; and DOES 1 through 25, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ALICE LIN, Individually

</td>
<td>

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

Electronically FILED by
Superior Court of California,
County of Los Angeles
1/29/2024 5:18 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Williams, Deputy Clerk

</td>
</tr>
</table>

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

<table>
<tr>
<td>

The name and address of the court is:
*(El nombre y dirección de la corte es):* Stanley Mosk Courthouse

111 North Hill Street, Los Angeles, CA 90012

</td>
<td>

CASE NUMBER:
*(Número del Caso):*

24STCV02193

</td>
</tr>
</table>

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Anne Marie Murphy, Cotchett, Pitre & McCarthy, LLP, 840 Malcolm Road, Burlingame, CA 94010.

<table>
<tr>
<td>

DATE:
*(Fecha)* 01/29/2024

</td>
<td>

Clerk, by   David W. Slayton, Executive Officer/Clerk of Court
*(Secretario)*   . D. Williams

</td>
<td>

, Deputy
*(Adjunto)*

</td>
</tr>
</table>

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

<table>
<tr>
<td>

[SEAL]

</td>
<td>

NOTICE TO THE PERSON SERVED: You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [X] on behalf of *(specify):* JPMORGAN CHASE BANK, N.A., A DELAWARE CORPORATION

under: [X] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
       [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
       [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
       [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

</td>
</tr>
</table>

Page 1 of 1

<table>
<tr>
<td>

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

</td>
<td>

**SUMMONS**

</td>
<td>

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

</td>
</tr>
</table>

Electronically FILED by
Superior Court of California,
County of Los Angeles
1/29/2024 5:18 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Williams, Deputy Clerk

1  ANNE MARIE MURPHY (SBN 202540)
   amurphy@cpmlegal.com
2  BLAIR V. KITTLE (SBN 336367)
   bkittle@cpmlegal.com
3  **COTCHETT, PITRE & McCARTHY, LLP**
4  San Francisco Airport Office Center
   840 Malcolm Road
5  Burlingame, CA 94010
   Telephone: (650) 697-6000
6  Facsimile: (650) 697-0577

7
   THERESA E. VITALE (SBN 333993)
8  tvitale@cpmlegal.com
   **COTCHETT, PITRE & McCARTHY LLP**
9  2716 Ocean Park Boulevard, Suite 3088
   Santa Monica, CA 90405
10 Telephone: (310) 392-2008
   Facsimile: (310) 392-0111
11

12 *Attorneys for Plaintiff*

13            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14              **IN AND FOR THE COUNTY OF LOS ANGELES**

15

16  **ALICE LIN**, individually,              CASE NO.  24STCV02193

17            Plaintiff,                       **COMPLAINT FOR DAMAGES**

18       v.                                      1.  **FINANCIAL ELDER ABUSE**
                                                     [Welf. & Inst. Code § 15600, *et seq.*]
19  **JPMORGAN CHASE BANK, N.A.**, a
20  Delaware Corporation,                        2.  **UNFAIR BUSINESS PRACTICES**
    **CHERYL MCMURRAY**, an individual;              [Bus. & Prof Code § 17200]
21  and **DOES 1 through 25**, inclusive,

22            Defendants.                       **DEMAND FOR JURY TRIAL**

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**COMPLAINT**

## TABLE OF CONTENTS

                                                                                              Page

I.     INTRODUCTION ........................................................................................... 1

II.    JURISDICTION AND VENUE................................................................... 12

III.   PARTIES ........................................................................................................ 9

IV.    FACTUAL ALLEGATIONS........................................................................ 9

       A.    Plaintiff Alice Lin ............................................................................... 9

       B.    Chase's Assistance in the Scammer's Pig Butchering Scheme.................. 10

       C.    Defendants Knew that Plaintiff Was the Victim of Financial Abuse............ 11

       D.    Defendant Violated Its Own Policies and Assurances to Monitor Transactions for
             Suspicious Activity........................................................................... 12

       E.    Defendants Knew Their Actions Were Likely to be Harmful to Plaintiff........... 13

       F.    Defendants Knew Plaintiff's Banking Activity Mirrored the Hallmark Signs of
             Financial Elder Abuse........................................................................ 11

       G.    Plaintiff Has Suffered Emotional and Mental Harm Due to Defendants' Financial
             Elder Abuse ...................................................................................... 13

V.     CAUSES OF ACTION ................................................................................ 14

       FIRST CAUSE OF ACTION
       Violation of The Elder Abuse and Dependent Adult Civil Protection Act Cal. Welf. & Inst.
       Code § 15600, et seq. (Against all Defendants) ............................................ 14

       SECOND CAUSE OF ACTION
       Violation of California's Unfair Competition Law Bus. & Prof Code § 17200  (Against all
       Defendants)............................................................................................... 16

VI.    PRAYER FOR RELIEF................................................................................ 17

VII.   DEMAND FOR JURY TRIAL..................................................................... 17

1     Plaintiff ALICE LIN ("**Plaintiff**") brings this action for damages against Defendants

2   JPMORGAN CHASE BANK, N.A. (a Delaware Corporation), CHERYL MCMURRAY (an

3   individual), and DOES 1 through 25, inclusive ("**Defendants**").  Plaintiff makes the following

4   allegations based upon information and belief.

5   I.     **INTRODUCTION**

6          1.     Plaintiff Alice Lin, now an 80-year-old widow, fell victim to a so-called on-line

7   "pig butchering" scam in the summer of 2022. The derogatory moniker "pig butchering" alludes to

8   the practice of fattening a pig before slaughtering it and refers to the lengths taken by its

9   perpetrators to gain the trust and confidence of their victims.[1]



21         2.     Without question, the evildoers are the unknown criminals who orchestrated the

22  elaborate scheme to set up a fake cryptocurrency investment platform site to steal vulnerable

23  seniors' and others' money. However, the crime depended on the assistance of a bank – in this

24  case, assistance and aid provided by agents and representatives of JPMORGAN CHASE BANK,

25  N.A. ("**Chase**"), including South Pasadena Branch Manager Cheryl McMurray ("**McMurray**")

26  and South Pasadena and Redondo Beach Branch employees.

27

28

---

[1] https://www.propublica.org/article/whats-a-pig-butchering-scam-heres-how-to-avoid-falling-victim-to-one (last accessed January 4, 2024)

3.   Chase has known for some time about these schemes and how its agents assist in perpetrating them, and it has been named in an increasing number of similar lawsuits involving elder Chase customers defrauded by wire scams dependent on the bank's active involvement and cooperation.[2]

4.   Between August 4 and August 22, 2022, Defendants Chase, McMurray and South Pasadena and Redondo Beach Branch employees. assisted in defrauding then 79-year-old Plaintiff Alice Lin out of over $720,000.00 (almost all of her retirement savings).

5.   The money Plaintiff and her husband had saved for decades before his passing was gone in less than three weeks due to Defendants' blatant violations of the Elder Abuse and Dependent Adult Civil Protection Act.

6.   Pig butchering scammers often target their victims through online communications platforms. They frequently initiate contact with their victims by saying they came across their contact info and then starting a conversation. After gaining the trust of their victims – sometimes over a period of months – scammers eventually introduce the idea of trading in cryptocurrency. They then direct victims to websites that are built to look like legitimate trading platforms.[3]

7.   The scammers then require the assistance of financial institutions, like Chase, and bank branch managers, like McMurray, to authorize large transactions, which the victim believes to be an "investment." Once financial institutions like Chase authorize a transaction that the victims believe to be an initial "investment," the platform purports to show substantial gains.

---

[2] *See, e.g.*, https://www.10news.com/news/team-10/elderly-couple-loses-nearly-700k-online-scam#:~:text=They%20filed%20a%20lawsuit%20against,purchase%20and%20bank%20wire%20transfers (last accessed January 4, 2024); and *Gray v. JPMorgan Chase Bank, N.A.*, Central District of California Case No. CV 22-03090 DSF (PVCx).

[3] Image of cellphone depicting pig butchering scheme tactics is an exemplar only and is available at https://www.trendmicro.com/vinfo/br/security/news/cybercrime-and-digital-threats/unmasking-pig-butchering-scams-and-protecting-your-financial-future (last accessed January 4, 2024)

8. Pig butchering scammers — assisted by financial institutions like Chase that continue to assist the scammers through repeated suspicious transactions — do not stop until they have deprived victims of any remaining savings.

9. Elder financial abuse, including pig butchering schemes that often target elders, has become as ubiquitous as it is pernicious. Older adults are targets for financial exploitation due to their income and accumulated life-long savings and thus scams targeting their savings have proliferated over the last decade.[4]

10. Often called the "crime of the 21st Century," elder financial abuse is epidemic, with estimates of the annual economic losses as high as $37 billion per year.[5]

11. Those monetary loss estimates do not include the often severe mental and/or physical impacts of financial abuse upon the elderly victims' health and well-being.

12. One of the documented impacts of elder abuse is earlier morbidity, with victims being three times more likely to die early than similarly situated non-victims.[6]

13. Chase representatives across two branches — along with the bank's inadequate policies, procedures and controls — failed to protect Plaintiff, a loyal and vulnerable customer, when *they wired nearly three quarters of a million dollars* from the Chase account in question ("Plaintiff's Chase account") on seven occasions, without performing a sufficient risk assessment.

14. At no time throughout this scheme to defraud Plaintiff did Chase employees, including Defendant McMurray and South Pasadena and Redondo Beach Branch employees Ivan

---

[4] U.S. Treasury Financial Crimes Enforcement Network, Advisory on Elder Abuse, FinCEN Advisory, FIN-2022-A002 (June 15, 2022), available at https://www.fincen.gov/sites/default/files/advisory/2022-06-15/FinCEN%20Advisory%20Elder%20Financial%20Exploitation%20FINAL%20508.pdf
[5] AARP & Princeton Survey Research Associates, AARP Research, Consumer Behavior, Experiences and Attitudes: A Comparison by Age Groups (March 1999), available at Consumer Behavior, Experiences and Attitudes: A Comparison by Age Groups (aarp.org)
[6] Burnett, J., Jackson, S.L., Sinha, A.K., Aschenbrenner, A.R., Murphy, K.P., Xia, R., & Diamond, P.M., Five-year all-cause mortality rates across five categories of substantiated elder abuse occurring in the community, J Elder Abuse Negl, 28(2), 59-75 (2016), abstract available at https://doi.org/10.1080/08946566.2016.1142920; see also Judicial Council of California; Center of Excellence on Elder Abuse and Neglect at the University of California, Irvine; & Program in Geriatrics, UC Irvine School of Medicine, Elder Abuse PocketReference A Medical/Legal Resource For California Judicial Officers (2012), available at https://www.courts.ca.gov/documents/ElderAbusePDoc.pdf.

COMPLAINT                                                                                    10

LAW OFFICES COTCHETT, PITRE & MCCARTHY, LLP

Lo, Kevin Tisuthiwongse, or Eddie Correa, ask any pertinent questions, flag these highly irregular and suspicious transactions for further review, or complete a sufficient risk assessment regarding the wires, despite the obviously fraudulent nature of the wires and the fact that the money was being simultaneously pulled from Plaintiff's accounts outside of Chase, deposited with Chase and then wired out from Chase shortly thereafter.

15.   Despite Chase policy requiring managerial approval before sending an outgoing wire transfer, Chase managers did not speak to Mrs. Lin before signing off on any of the seven wires that took place on five different days in August 2022.



16.   Further, no one at Chase picked up a phone to contact Plaintiff's daughter, Cynthia Lin (Sugiyama), who was listed as a co-owner of the account.

17.   Prior to August of 2022, Plaintiff had not completed an outgoing wire transfer with Chase for at least six years,[7] and the amount of the first sum alone that Chase employees wired

---

[7] Online Statements regarding Plaintiff's Chase account at issue are only available going back seven years.

1   from Plaintiff's account dwarfed the average monthly balance in her account over that same

2   period.

3       18.    The sudden, irregular activity on Plaintiff's account strongly suggested the financial

4   exploitation of an elder that Chase's own website states is on the rise.[8]

5       19.    Nonetheless, not one of the numerous agents of the company, including McMurray,

6   or her branch employees who Plaintiff met with numerous times, and who personally completed

7   numerous fraudulent transactions and observed the sudden onslaught of irregular activity, reported

8   that financial elder abuse may have occurred; delayed (or even questioned) the unusually large

9   transactions; called the additional accountholder, Plaintiff's daughter, to alert her of the suspicious

10   activity; or prevented the fraudulent activity from happening.  Cal. Welf. & Inst. Code § 15630.1.

11      20.    As between a disadvantaged elderly customer and the financial institutions

12   entrusted to keep the costumer's savings safe, only the latter is realistically positioned to prevent

13   scams which are so obviously preying upon their elderly clientele.

14      21.    In violating their own policies, procedures and controls, Defendants knew or should

15   have known that their actions were likely to be harmful to Plaintiff.  The financial elder abuse that

16   took place would not have occurred were it not for Defendants' actions. Because of Defendants'

17   actions, Plaintiff has suffered irreparable financial loss and significant emotional distress.

18   **II.    JURISDICTION AND VENUE**

19      22.    The Superior Court of the State of California has jurisdiction in this matter because

20   Plaintiff is a citizen and resident of the State of California, Defendant McMurray is a citizen and

21   resident of the State of California and Defendant JPMorgan Chase Bank, N.A. conducts business

22   in California.

23      23.    Venue is proper in this judicial district and the County of Los Angeles pursuant to

24   Code of Civil Procedure § 395 because Defendants' unlawful actions and omissions, as set forth

25   herein, occurred in the County of Los Angeles.

26

27

28   [8] https://www.chase.com/digital/resources/privacy-security/financial-abuse (last accessed January 4, 2024)

## III.   PARTIES

24.     At all relevant times, Plaintiff Alice Lin was a resident of the State of California, County of Los Angeles, City of Alhambra. At the time of the transactions at issue, Plaintiff was 79 years of age and an "elder" as that term is defined by Welfare & Institutions Code § 15610.27

25.     Defendant JPMorgan Chase Bank, N.A. is the largest bank in the United States by asset size, with more than $3 trillion in consolidated assets. It is incorporated in the state of Delaware and does significant business in California.

26.     Defendant Cheryl McMurray is an individual who, at all relevant times, resided in Los Angeles County. At the time of the transactions at issue, McMurray was employed by Chase as Branch Manager at the 1305 Fair Oaks Ave, South Pasadena, CA 91030 location.

27.     The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants DOES 1 through DOES 25, inclusive, are unknown to Plaintiff who therefore sue said Defendants by such fictitious names pursuant to Code of Civil Procedure § 474. Plaintiff further allege that each of said fictitious Defendants is in some manner responsible for the acts and occurrences hereinafter set forth. Plaintiff will amend this Complaint to show their true names and capacities when the same are ascertained, as well as the manner in which each fictitious Defendant is responsible.

28.     Plaintiff alleges that at all times relevant to the events giving rise to this action, each and every Defendant was acting as an agent or joint venturer of each of the other Defendants. Plaintiff further allege that at all times relevant to those events, each and every Defendant was acting within the course and scope of that agency or joint venture at the direction of or with the full knowledge, permission, or consent of each and every other Defendant. In addition, each of the acts or omissions of each and every Defendant was made known to, and ratified by, each of the other Defendants.

## IV.   FACTUAL ALLEGATIONS

### A.   Plaintiff Alice Lin

29.     In the 1960s, Plaintiff, now an 80-year-old widow, immigrated to the United States with hopes of achieving a better life in America.

1    30.    For years, Plaintiff and her late husband spent within their means and saved up

2  money in hopes of taking care of themselves financially in retirement.

3    31.    After her husband passed, Plaintiff continued to support herself and her son with the

4  hard-earned and carefully saved money.

5    32.    Tragically and unexpectedly, nearly all of Plaintiff's hard-earned savings were

6  stolen within three short weeks when she became the unsuspecting target of a common fraudulent

7  financial scheme tailored to her vulnerable status as an elder and reliant on Defendant's active

8  participation.

9    **B.    Chase's Assistance in the Scammer's Pig Butchering Scheme**

10    33.    Pig butchering schemes like the one Plaintiff fell victim to are so prevalent that

11  Forbes recently estimated that the likely global losses due to the particular scams are in the

12  billions.[9] This is in addition to the estimated $37 billion per year the global media company

13  estimates elder adults lose to financial scams each year.[10]

14    34.    Plaintiff was deceived by a man who called himself, "Justin." Justin used a mobile

15  messaging application to contact Plaintiff and to convince Plaintiff over time that he was her friend

16  and that he had experienced success with cryptocurrency investments that Plaintiff could also

17  benefit from. Justin instructed Plaintiff to download the fake investment application on her phone

18  and to transfer her savings by moving money into her Chase account.

19    35.    Next, Justin needed, and received Chase's assistance getting Plaintiff to wire money

20  out of the same account.

21    36.    Completely unaware that she was being defrauded, Plaintiff first walked into her

22  local Chase branch in South Pasadena on August 4, 2022 and requested help wiring $20,000.00 to

23  a bank account with Cross River Bank. Plaintiff met with Chase employee, Ivan Lo.

24

25

26  _____

27  [9] https://www.forbes.com/sites/cyrusfarivar/2022/09/09/pig-butchering-crypto-super-
    scam/?sh=265dda0eec8e (last accessed January 4, 2024)

28  [10] https://www.forbes.com/advisor/personal-finance/elder-financial-
    abuse/#:~:text=One%20in%2010%20Americans%20aged,of%20elder%20abuse%20is%20financi
    al. (last accessed January 4, 2024)

37. Though Lo was required to get authorization for the wire from his branch manager, Defendant McMurray, at no time did McMurray speak to Plaintiff before authorizing the transaction.

38. Even more, at no time before wiring Plaintiff's money did Defendant McMurray, or any Chase employee, ask Plaintiff the reason for the wire; call Plaintiff's daughter, Cynthia Sugiyama, who was a co-account holder to alert her about the wire; or perform a sufficient risk assessment before approving the wire.

39. In the following weeks, **Chase agents** from the South Pasadena and Redondo Beach Branches, including Defendant McMurray, assisted **in defrauding Plaintiff of nearly all of her retirement savings, a devastating loss of $721,500.00.**

C. <u>Defendants Knew that Plaintiff Was the Victim of Financial Abuse</u>

40. Plaintiff has banked with Chase for many years.[11] Though Plaintiff utilized Chase's services for personal banking, credit card, and mortgage lending over the years. Plaintiff had not sent a wire through Chase for many years.[12]

41. After her late husband's passing and prior to being victimized, Plaintiff covered most of her and her son's expenses via retirement savings.

42. At the time of the first unusual, suspicious transaction, Defendant Chase knew that Plaintiff spent modestly, and never transferred large sums of money into or out of her Chase account. In fact, prior to the scam, Plaintiff's average monthly balance in 2022 was approximately $7,600.00. In the six preceding years, her highest average monthly balance for any given year never exceeded $18,000.00.

43. By August of 2022, Plaintiff was 79, clearly over the age of 65, and residing in California, an "Elder" as defined by Cal.Welf. & Inst.Code § 15610.2.

---

[11] Plaintiff banked with one of Chase's wholly acquired predecessors, Washington Mutual, for some of this time.
[12] Plaintiff can confirm she had not sent a wire transfer for at least seven years, based on the availability of records going back that far but believes she had not sent any wire transfers for much longer than that.

1    44.    The activity related to this fraud that occurred in her Chase account in August of

2    2022 was unusual and suspicious from the first transaction and only became more unusual and

3    suspicious with each subsequent fraudulent transaction.

4    **D.    Defendant Violated Its Own Policies and Assurances to Monitor Transactions**

5    **for Suspicious Activity**

6    45.    At all relevant times, Defendants knew that elderly individuals are especially

7    susceptible to financial fraud and that financial elder abuse accounts for tens of billion of dollars in

8    losses each year (according to the Consumer Financial Protection Bureau). As explained by Chase

9    on its website's financial-abuse page, "[f]raud is on the rise . . . Fraud reports have increased by

10   over 100% in the last 10 years."[13]

11   46.    Chase has known about these schemes and how its agents assist in perpetrating

12   them for some time. Tellingly, Chase has been named in an increasing number of similar lawsuits

13   involving elder Chase customers defrauded by wire scams dependent on the bank's active

14   involvement and cooperation.[14]

15   47.    Chase was and is aware that one of the most "popular" schemes used to defraud

16   elders is a fake "investment opportunity," like the scheme Plaintiff fell victim to.[15]

17   /././

18   /././

19   /././

20   /././

21   /././

22   /././

23

24   [13] https://www.chase.com/digital/resources/privacy-security/financial-abuse (last accessed January 4, 2024)

25   [14] *See, e.g.,* https://www.10news.com/news/team-10/elderly-couple-loses-nearly-700k-online-scam#:~:text=They%20filed%20a%20lawsuit%20against,purchase%20and%20bank%20wire%20t

26   ransfers (last accessed January 4, 2024); and *Gray v. JPMorgan Chase Bank, N.A.*, Central District

27   of California Case No. CV 22-03090 DSF (PVCx).

28   [15] https://www.chase.com/content/dam/chase-ux/documents/digital/resources/understanding_financial_scams_to_help_protect_yourself_and_yo ur_loved_ones.pdf (last accessed January 4, 2024)

48.     In order to assure customers that Chase will protect them from such popular fraudulent schemes, Chase promises customers that Chase "monitor[s] [customer's] chase.com profile to help [] detect fraud as early as possible."[16]

49.     Even more, Chase and its agents and representatives are and have been mandated reporters of suspected financial abuse of an elder, such as Plaintiff, as defined by the current version of Cal.Welf. & Inst.Code § 15630.2, since January 1, 2020.

**E.     Defendants Knew Their Actions Were Likely to be Harmful to Plaintiff**

50.     In violation of their own obligations as mandatory reporters, their own fraud prevention policies and due to their failure to monitor Plaintiff's transactions for suspicious activity, beginning on August 4, 2022 and continuing in rapid succession for the next 18 days, until August 22, 2022, Chase representatives completed the following wire transfers from Plaintiff's Chase account, totaling $721,500.00:

///

///

///

---

[16] https://www.chase.com/digital/resources/privacy-security/security/how-we-protect-you (last accessed January 4, 2024)

COMPLAINT                                                                                                                13

- August 4, 2022, employees at the Chase South Pasadena Branch who were under the management of Defendant McMurray wired $20,000.00 to Cross River Bank without conducting a sufficient risk assessment, contacting Plaintiff's daughter, having a bank manager, including branch Manager McMurray herself, speak to Plaintiff;

- August 5, 2022, Chase Redondo Beach Branch employee, Eddie Correa, submitted a wire transfer request for $41,500.00 to Cross River Bank without conducting a sufficient risk assessment, contacting Plaintiff's daughter, or having a bank manager speak to Plaintiff;

- August 8, 2022, employee Ivan Lo at the Chase South Pasadena Branch who were under the management of Defendant McMurray wired a whopping $110,000.00 to Cross River Bank, without conducting a sufficient risk assessment, contacting Plaintiff's daughter, or having a bank manager, including branch Manager McMurray herself, speak to Plaintiff;

- August 9, 2022, a South Pasadena Branch employee helped Plaintiff deposit a cashier's check for $199,000.00. Plaintiff advised the employee she wanted to wire the money out of the account after depositing the check. The employee told Plaintiff she would be unable to wire the money until August 10 and that another customer who wired money had "lost it." However, no Chase employee, including branch manager McMurray took any action to stop the ongoing fraud, including by conducting a sufficient risk assessment, or contacting Plaintiff's daughter;

- August 10, 2022, Plaintiff returned to the same bank branch and met with employee Ivan Lo, who had also wired Plaintiff's money on August 4. Lo effectuated two wires; one "test" wire for $1,000.00 to Metropolitan Commercial Bank and another for the largest amount thus far, a massive $200,000.00 wire to HSBC Bank. Lo, without conducting a sufficient risk assessment, contacting Plaintiff's daughter or having a bank manager, including branch Manager McMurray herself, speak to Plaintiff, completed both wires;

- August 11, 2022, the very next day, Lo, while under the management of Defendant McMurray, wired another $150,000.00 to Metropolitan Commercial Bank without conducting a sufficient risk assessment, contacting Plaintiff's daughter or having a branch manager McMurray speak to Plaintiff; and finally

- August 22, 2022, Lo again wired $199,000.00 to Metropolitan Commercial Bank without conducting a sufficient risk assessment, contacting Plaintiff's daughter or having a bank manager, including branch manager McMurray speak to Plaintiff.

51.    Preceding each of the highly unusual and suspicious wire transfers draining Plaintiff's retirement savings were equally unusual and suspicious transfers and deposits into her account:

- On August 4, 2022, Plaintiff transferred $6,900.00 and then $14,180.00 into her Chase Account, and $20,000 was then wired out of her Chase account that same day.

- On August 5, 2022, the next day, Plaintiff transferred another $41,500.00 and $113,000.00 into her account, and then submitted an outgoing wire transfer request for $41,500.00 that same day. The funds were not sent until the following Monday, August 8, 2022, when another, $110,000 was also wired out of Plaintiff's account.

- On August 9, 2022, Plaintiff deposited a cashier's check for $199,000.00 and then, the next day, wire transferred another $150,000.00 into her Chase account.

- On August 18, 2022, Plaintiff transferred the final $199,000.00 into her Chase account. The money was wired out by Chase employees by August 22, 2022.

52.    **By August 22, 2022, $721,500.00 had been wired out of the Plaintiffs' Chase account thanks to the assistance of Chase agents and employees.**

53.    None of this banking activity, which was highly unusual for Plaintiff, was monitored, flagged, reported as suspicious, reported to the co-account holder, or prevented by Defendant McMurray, South Pasadena or Redondo Beach employees, or any other Chase agents or representatives who approved or effectuated the wire transfers.

54.   Defendants knew that the activity constituted financial elder abuse, as defined and outlined on its own website.

55.   Defendants knew that by failing to follow their own policies, including failing to continuously monitor Plaintiff's account for suspicious activity, Plaintiff would be harmed.

56.   Because of Defendants' knowing assistance in obvious financial fraud and repeated failures to fulfill its reporting duties, to follow its own policies, or to provide Plaintiff with the same protection it promises all of its customers, **Plaintiff has lost almost all of her retirement savings, nearly three quarters of a million dollars.**

F.   **Defendants Knew Plaintiff's Banking Activity Mirrored the Hallmark Signs of Financial Elder Abuse**

57.   A decade ago, the Board of Governors of the Federal Reserve System and Consumer Financial Protection Bureau joined with six other federal agencies in issuing an "Interagency Guidance on Privacy Laws and Reporting Financial Abuse of Older Adults" ("Interagency Guidance") to financial institutions such as Defendant Chase. The Interagency Guidance underscored what by then was a well-known problem to Defendants and the rest of the banking community:

> Recent studies suggest that financial exploitation is the most common form of elder abuse . . . Older adults can become targets of financial exploitation by family members, caregivers, scam artists, financial advisers, home repair contractors, fiduciaries (such as agents under power of attorney and guardians), and others. Older adults are attractive targets because they may have significant assets or equity in their homes. They may be especially vulnerable due to isolation, cognitive decline, physical disability, health problems, and/or the recent loss of a partner, family member, or friend. **Financial institutions can play a key role in preventing and detecting elder financial exploitation. A financial institution's familiarity with older adults it encounters may enable it to spot irregular transactions, account activity, or behavior. Prompt reporting of suspected financial exploitation to adult protective services, law enforcement, and/or long term ombudsmen can trigger appropriate intervention, prevention of financial losses, and other remedies.**[17]   (emphasis added)

58.   The importance of the role of financial institutions in preventing and reporting financial elder abuse is emphasized in the Interagency Guidelines, including specifically clarifying

---

[17] https://files.consumerfinance.gov/f/201309_cfpb_elder-abuse-guidance.pdf (last accessed January 4, 2024)

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

1  that financial institutions may observe financial exploitation and may report such conduct without

2  violating an older adult's privacy.[18]

3       59.     Further, the Interagency Guidelines specifically identify the well-known hallmarks

4  of financial abuse of older adults, including, but not limited to:

5          •   Erratic or unusual banking transactions, or changes in banking patterns, such as:

6              Uncharacteristic attempts to wire large sums of money.[19]

7       60.     A single such banking transaction by an elderly customer signifies financial abuse

8  of an elder, as defined by California law, that is specifically identifiable and preventable by

9  Financial Institutions like Defendants.

10       61.     Within days of the first wire transfer on August 4, Plaintiff's banking pattern, each

11  transaction of which Defendants actively facilitated, so blatantly demonstrated elder financial

12  abuse, there is no question Defendants knew and substantially assisted in the abuse for the

13  subsequent weeks, to the point that Plaintiff's life savings were nearly depleted.

14       62.     No other plausible explanation existed for the manifestly suspicious string of seven

15  wire transfers amounting to over $720,000.00, involving two Chase branches.

16       63.     Further, Chase knew that six out of seven of the suspicious wire transfers made

17  from Plaintiff's Chase account exceeded the U.S. Department of Treasury's $10,000.00 threshold

18  requiring the filing of a "Currency Transaction Report," thereby invoking the scrutiny of Chase's

19  management. That scrutiny would have necessarily focused upon (and thereby informed Chase's

20  management of) the identity of the customer initiating the suspicious wire transfer, the amount of

21  the suspicious transaction and the identity of the recipients.

22       64.     Despite the fact that the very first wire transfer was for double the Department of

23  Treasury's threshold, Chase employees continued to knowingly and substantially assist the blatant

24  financial elder abuse, completing five more enormous transfers of four, ten and even twenty times

25  the threshold without contacting Plaintiff's co-account holder, her daughter.

26       65.     In the meantime, Chase not only failed to stop these fraudulent wire transfers, it

27  continued to charge Plaintiff for each of the wire transfers that drained Plaintiff's accounts.

28

---

[18] Id.
[19] Id.

66.     When federal legislation such as the 2009 CARD Act clamped down on certain predatory pricing practices by national banks (e.g., high late fees, interest rate hikes, expensive overdraft protection), many of those banks, including Chase, looked for new sources of revenue to make up for what they lost. One new source was a higher fee for making wire transfers.[20]

67.     On information and belief, Defendants focus most of their employee training on developing a banker's abilities to sell Chase products of services, and complete transactions correctly, and conversely, very little training on their duty to not knowingly assist elder financial abuse or on how to report and prevent elder financial abuse.

68.     Because Chase spends so much more time training its representatives to sell bank products and services than it does training its representatives to spot and stop financial elder abuse, those skewed priorities left its representatives far more prepared to earn the fee it charges for wire transfers than to stop the blatantly unlawful elder financial abuse they were substantially assisting in this case.

G.      **Plaintiff Has Suffered Emotional and Mental Harm Due to Defendants' Financial Elder Abuse**

69.     Financial elder abuse causes irreparable harm to its elderly victims, as occurred here. By the time the financial elder abuse is discovered by the victims, the original perpetrator has usually spent or otherwise siphoned off the elderly victims' assets. Efforts at restitution, therefore, are highly unlikely to yield any recovery of assets. The elderly victim often experiences a permanent decline in his or her standard of living. Many victims suffer even more from feelings of betrayal that typically accompany financial abuse.

70.     Prosecutors call financial exploitation of the elderly a "violent crime," not because of any physical force used by the wrongdoer, but because of its lethal effects. According to a leading resource on elder abuse, published for California Judicial Officers, the impacts of abuse include the following:

- Early morbidity for the elder, with the risk of death three times higher than for non-victims;

[20] https://www.newyorker.com/business/currency/the-high-cost-for-the-poor-of-using-a-bank (last accessed January 4, 2024)

COMPLAINT                                                                                 13

1    • Significant health effects, including declining functional abilities; this often leads to

2    progressive dependency, social isolation, a sense of helplessness, and a cycle of

3    worsening stress and psychological decline.[21]

4    71.    In addition to the hundreds of thousands of dollars that Plaintiff lost due to

5    Defendants' active participation in this scheme, Plaintiff has suffered devastating mental and

6    emotional harm, has lost sleep and has even considered ending her own life, upon learning of the

7    scheme and about the role of the financial institution she formerly trusted.

8    **V.    CAUSES OF ACTION**

9    **FIRST CAUSE OF ACTION**

10    **Violation of The Elder Abuse and Dependent Adult Civil Protection Act**

11    **Cal. Welf. & Inst. Code § 15600, et seq.**

12    **(Against all Defendants)**

13    72.    Plaintiff incorporates by reference the allegations in paragraphs 1-74 as if they were

14    set out in full herein.

15    73.    At all times herein mentioned, Plaintiff was an elder within the meaning of the

16    California Welfare & Institutions Code and a resident of California. Defendants knew Plaintiff was

17    an elder. Because of her age, Plaintiff was substantially more vulnerable to the deceptive taking of

18    her retirement savings and assets.

19    74.    In order to assure customers that Chase will protect them from such popular

20    fraudulent schemes, Chase promises customers that Chase "monitor[s] [customer's] chase.com

21    profile to help us detect fraud as early as possible."[22]

22    75.    Further, Defendants are mandated reporters of suspected financial abuse of an elder

23    adult pursuant to Cal. Welf. & Inst. Code § 15630.1, were in direct contact with Plaintiff, reviewed

24    Plaintiff's financial documents, records, and transactions in connection with providing financial

25    services to her, and who, within the scope of their professional practice, observed, and knew that

26    

---

27    [21] "Elder Abuse Pocket Reference - A Medical/Legal Resource For California Judicial Officers," a
joint publication by the Judicial Council of California, Center of Excellence on Elder Abuse and
Neglect and Program in Geriatrics, UC Irvine School of Medicine (2012), page 8.

28    [22] https://www.chase.com/digital/resources/privacy-security/security/how-we-protect-you (last
accessed January 4, 2024)

1  her sudden, suspicious, and highly unusual banking activity reasonably appeared to be financial
2  abuse.

3      76.    Defendants observed and had knowledge of behavior and unusual circumstances
4  and transactions that would lead an individual with adequate training or experience, based on the
5  same facts, to form a reasonable belief that Plaintiff was the victim of financial abuse of an elder.

6      77.    Defendants' own policies dictate for the continuous monitoring of such suspicious
7  activity.

8      78.    Due to Defendants' policies, knowledge and expertise, the failure to report, prevent
9  or delay the suspicious transfers of hundreds of thousands of dollars from Plaintiff's Chase account
10 in August of 2022, constituted assisting in the taking of funds from Plaintiff for a wrongful
11 purpose, with the intent to defraud.

12     79.    Defendants knew that their wrongful conduct was likely to be harmful to Plaintiff.

13     80.    By performing the acts set forth above, Defendants are liable for financial abuse of
14 an elder.

15     81.    As a legal result of Defendants' conduct herein alleged, Plaintiff has suffered
16 damages, including, without limitation, general and economic damages, in an amount according to
17 proof at time of trial.

18     82.    The actions taken by Defendants set forth above were in all respects reckless,
19 fraudulent, oppressive, and/or malicious, and manifested conscious disregard for the rights of
20 Plaintiff. Plaintiff is therefore entitled to an award of exemplary and punitive damages pursuant to
21 § 3294 of the California Civil Code, according to proof at trial.

22     83.    Plaintiff is entitled to reasonable attorney's fees and costs pursuant to Cal. Welf. &
23 Inst. Code § 15657.5.

24     84.    Wherefore, Plaintiff prays for relief as set forth below.

25 ///
26 ///
27 ///
28 ///

**SECOND CAUSE OF ACTION**

Violation of California's Unfair Competition Law

**Bus. & Prof Code § 17200**

**(Against all Defendants)**

85.   Plaintiff incorporates by reference the allegations in paragraphs 1-87 as if they were set out in full herein.

86.   Defendants' conduct was unlawful, unfair, and/or fraudulent within the meaning of Business & Professions Code § 17200.

87.   Defendants' conduct was unlawful within the meaning of Business & Professions Code § 17200 in that, among other conduct and statutes, Defendants' conduct violated Cal. Welf. & Inst. Code § 15630.1 *et seq.*, as described in this Complaint.

88.   Among other things, Defendants' agents and representatives failed to protect Plaintiff, an elder within the meaning of the California Welfare & Institutions Code and a resident of California, from predatory elder financial abuse, by failing to follow its own fraud monitoring, prevention and protection policies and transferring hundreds of thousands of dollars of Plaintiff's funds via wire transfers, failing to report the transfers to Plaintiff's co-account holder, and failing to fulfill their reporting requirements pursuant to Cal. Welf. & Inst. Code § 15630.1.

89.   Defendants' actions are part of a general business practice that was effectuated by numerous agents and representatives across various different Chase locations in Los Angeles County.

90.   By reason of the acts and conduct alleged herein, Plaintiff has suffered injury in fact.

91.   Defendants have derived economic benefit by failing to follow their fraud prevention and protection policies and assisting in the taking of Plaintiff's funds from her Chase account. Plaintiff has a right to an order requiring Defendants to restore Plaintiff's money and interest, which may have been acquired by unfair, unlawful and/or fraudulent business practices, as well as the resulting general damages.

92.    Pursuant to Business & Professions Code § 17203, Plaintiff seeks from Defendants restitution of all earnings, profits, compensation and benefit it obtained from Plaintiff, as a result of its conduct in violation of Business & Professions Code §§ 17200 *et seq.*, as described herein.

93.    Plaintiff further seeks injunctive relief preventing Defendants from collecting on any outstanding debts owed by Plaintiff to Defendants.

94.    Wherefore, Plaintiff prays for relief as set forth below.

## VI.    PRAYER FOR RELIEF

1.    Injunctive relief to prevent Defendants from collecting from Plaintiff any outstanding debts;

2.    Compensatory damages in an amount according to proof at trial;

3.    Special and general damages in an amount according to proof;

4.    Restitution in an amount according to proof;

5.    Exemplary and punitive damages according to proof;

6.    Costs of suit herein incurred;

7.    Pre- and post-judgment interest at the maximum legal rate:

8.    For attorneys' fees; and,

9.    For such other relief as the Court may deem just and proper.

## VII.    DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Dated: January 29, 2024          COTCHETT, PITRE & McCARTHY, LLP

By: _____
ANNE MARIE MURPHY
BLAIR V. KITTLE
THERESA E. VITALE

*Attorneys for Plaintiff*

**CM-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Anne Marie Murphy (SBN 202540); Blair V. Kittle (SBN 336367);<br>Theresa E. Vitale (SBN 333993)<br>Cotchett, Pitre & McCarthy, LLP, 840 Malcolm Road, Burlingame, CA 94010<br>TELEPHONE NO.: (650) 697-6000    FAX NO. *(Optional):* (650) 697-0577<br>E-MAIL ADDRESS: amurphy@cpmlegal.com; tvitale@cpmlegal.com<br>ATTORNEY FOR *(Name):* Plaintiff Alice Lin | **FOR COURT USE ONLY** |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES<br>STREET ADDRESS: 111 North Hills<br>MAILING ADDRESS: 111 North Hills<br>CITY AND ZIP CODE: Los Angeles, 90012<br>BRANCH NAME: Stanley Mosk Courthouse | Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>1/29/2024 5:18 AM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By D. Williams, Deputy Clerk |
| **CASE NAME:**<br>Alice Lin v. JPMorgan Chase Bank, N.A., et al. | |

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] **Unlimited**    [ ] **Limited**<br>(Amount        (Amount<br>demanded      demanded is<br>exceeds $25,000)  $25,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 24STCV02193 |
| | | JUDGE: |
| | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [X] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties      d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more
       issues that will be time-consuming to resolve               courts in other counties, states, or countries, or in a federal
   c. [ ] Substantial amount of documentary evidence               court
                                                        f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* Financial Elder Abuse and Unfair Business Practices (2)
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: January 29, 2024
Anne Marie Murphy
_____                    ► _____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice– Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
   Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment *(non-domestic relations)*
   Sister State Judgment
   Administrative Agency Award *(not unpaid taxes)*
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-harassment)*
   Mechanics Lien
   Other Commercial Complaint Case *(non-tort/non-complex)*
   Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

**CIVIL CASE COVER SHEET**

| SHORT TITLE | | CASE NUMBER | |
|---|---|---|---|
| Alice Lin v. JPMorgan Chase Bank, N.A., et al. | | 24STCV02193 | |

Electronically FILED by
Superior Court of California,
County of Los Angeles
1/29/2024 5:18 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Williams, Deputy Clerk

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1. Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7. Location where petitioner resides. |
| 2. Permissive filing in Central District. | 8. Location wherein defendant/respondent functions wholly. |
| 3. Location where cause of action arose. | 9. Location where one or more of the parties reside. |
| 4. Location where bodily injury, death or damage occurred. | 10. Location of Labor Commissioner Office. |
| 5. Location where performance required, or defendant resides. | 11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6. Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

| SHORT TITLE | CASE NUMBER |
|---|---|
| Alice Lin v. JPMorgan Chase Bank, N.A., et al. | |

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☑ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

LASC CIV 109 Rev. 01/23                CIVIL CASE COVER SHEET ADDENDUM                LASC Local Rule 2.3

For Mandatory Use                                AND STATEMENT OF LOCATION

| SHORT TITLE | CASE NUMBER |
|---|---|
| Alice Lin v. JPMorgan Chase Bank, N.A., et al. | |

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Contract**<br>(Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/<br>Inverse<br>Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real<br>Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer<br>– Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer<br>– Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer<br>– Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer<br>– Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re<br>Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate<br>(02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial<br>Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Alice Lin v. JPMorgan Chase Bank, N.A., et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Alice Lin v. JPMorgan Chase Bank, N.A., et al. | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON: | | ADDRESS: |
|---|---|---|
| ☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | | 1305 Fair Oaks Ave |
| CITY: South Pasadena | STATE: CA    ZIP CODE: 91030 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _Central_ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated:  _January 29, 2024_        _____

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**01/29/2024**<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ D. Williams _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br>**UNLIMITED CIVIL CASE** | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>24STCV02193 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✓ | Christopher K. Lui | 76 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record    David W. Slayton, Executive Officer / Clerk of Court

on 01/29/2024 _____
     (Date)               By D. Williams _____, Deputy Clerk

LACIV 190 (Rev 6/18)      **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

<u>INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES</u>

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

<u>APPLICATION</u>
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

<u>PRIORITY OVER OTHER RULES</u>
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

<u>CHALLENGE TO ASSIGNED JUDGE</u>
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

<u>TIME STANDARDS</u>
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

<u>COMPLAINTS</u>
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

<u>CROSS-COMPLAINTS</u>
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

<u>STATUS CONFERENCE</u>
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

<u>FINAL STATUS CONFERENCE</u>
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

<u>SANCTIONS</u>
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

<u>Class Actions</u>
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

<u>*Provisionally Complex Cases</u>
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT -- UNLIMITED CIVIL CASE**

 **Superior Court of California, County of Los Angeles**

<div style="border:1px solid">

### ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

</div>

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or decision by a judge or jury.

### Main Types of ADR
1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

LASC CIV 271 Rev. 03/23
For Mandatory Use

### How to Arrange Mediation in Los Angeles County

Mediation for civil cases is voluntary and parties may select any mediator they wish.  Options include:

    a.  **The Civil Mediation Vendor Resource List**
        If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

      •  **ADR Services, Inc.** Assistant Case Manager Janet Solis, janet@adrservices.com (213) 683-1600
      •  **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

        These organizations cannot accept every case and they may decline cases at their discretion. They may offer online mediation by video conference for cases they accept.  Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

        **NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate, or small claims cases.**

    b.  **Los Angeles County Dispute Resolution Programs.**  Los Angeles County-funded agencies provide mediation services on the day of hearings in small claims, unlawful detainer (eviction), civil harassment, and limited civil (collections and non-collection) cases. https://dcba.lacounty.gov/countywidedrp/

        **Online Dispute Resolution (ODR).**  Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.  https://my.lacourt.org/odr/

    c.  Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3.  **Arbitration:**  Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome.  In "binding" arbitration, the arbitrator's decision is final; there is no right to trial.  In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.  For more information about arbitration, visit https://www.courts.ca.gov/programs-adr.htm

4.  **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial.  The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  For information about the Court's MSC programs for civil cases, visit https://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website:  https://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

**DEPARTMENT 76**
**COURTROOM INFORMATION**

**Judge:** Christopher K. Lui
**Judicial Assistant:** Tamie Le
**Courtroom Assistant:** Shari Sato

**Court Address:** 111 N. Hill Street, Los Angeles, CA 90012
**Telephone Number:** (213) 830-0776
**Courtroom Hours:** 8:30 a.m. to 4:30 p.m. (Lunch Hour 12:00 p.m. - 1:30 p.m.)

**CHECK IN:** The Court strongly encourages all parties and counsel to make remote appearances via the LA Court Connect system. If a physical appearance is made, counsel or parties should check in with the courtroom staff promptly at the time their matter is calendared. One business card is required for each attorney/self-represented party. Write the calendar number of your case and designation of party represented. If you do not have a business card, you will be asked to write all your information on a blank attorney card.

**FILINGS:** The Los Angeles County Superior Court has implemented electronic filing of all documents filed in the Limited and Unlimited (Non-Complex) Civil matters by litigants represented by attorneys pursuant to the operative General Order re Mandatory Electronic Filing for Civil.

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved Electronic Filing Service Provider. Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory Electronic Filing requirements and may file papers at the filing window on the first floor, Room 102; however, the Court encourages self-represented parties to participate in electronic filing and service if they are able to do so.

**EX PARTE APPLICATIONS:** *Ex parte* applications will be considered Monday through Friday at 8:30 a.m. Applicants must comply with California Rules of Court, rule 3.1200, *et seq.*, submit a proposed order, and pay the filing fee before appearing. The parties should not expect to present oral argument in connection with an *ex parte* application. (*See* Cal. Code Civ. Proc. § 166(a)(1)). The Court will inform the parties if it wishes to hear argument before ruling.

*Ex parte* applications are reserved for exigent circumstances. The applicant must comply with Cal. Rule of Court, rule 3.1202(c): "An applicant must make an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief *ex parte*."

**TRIAL CONTINUANCES:** Any request to change trial dates must be made by *ex parte* application or by noticed motion.

**MOTIONS:** All motions to be heard in Department 76, other than motions *in limine*, must be reserved through the Court Reservation System (CRS) on the Court's website. Follow the links Online Services – Court Reservation System (CRS) on the Court's website. CRS must also be used to continue or cancel motions. Motions are heard Tuesday-Friday and are set for hearing at 8:30 a.m. The Court strongly encourages parties to appear remotely via LA Court Connect.

**INFORMAL DISCOVERY CONFERENCES:** The Court encourages the use of Informal Discovery Conferences ("IDCs") but **does not require** that the parties conduct an IDC prior to filing a discovery motion. However, counsel should be aware that in some circumstances, the Court will order an IDC on its own motion before holding a hearing on discovery motions that have already been filed.

An IDC will only be scheduled pursuant to a **joint request** by the parties. All IDC requests must be made through the filing of a stipulation and proposed order. The stipulation must contain the representations of the

1

parties that (1) they have met and conferred in an effort to resolve their disputes, and (2) they believe that an IDC will assist in resolving their discovery issues. A failure to meet and confer before an IDC is grounds for the Court to cancel or continue the IDC. A stipulation requesting an IDC may also include a request that the Court toll the deadline for filing discovery motions on issues encompassed by the IDC. (See Code of Civil Procedure § 2016.080(c)(2)).

A stipulation requesting an IDC must also attach a joint statement of the discovery in dispute, not exceeding ten double spaced pages. The joint statement should consist of a narrative description of the dispute and meet and confer efforts and must not simply reproduce the disputed discovery requests and responses thereto.

**TRIALS:** The Court sets trial dates at the Case Management Conference or Trial Setting Conference once the case is at issue. Unless the court is dark/closed, all trials are set on Mondays, and all Final Status Conferences are set on a Monday two weeks before the trial date.

Unless the Court orders otherwise, **lead trial counsel** must attend the Final Status Conference. The parties should review and follow the procedures prescribed in Local Rule 3.25(f)-(h) with regard to preparation for the Final Status Conference unless the Court orders otherwise. Pursuant to Local Rule 3.25(g)(3), all trial readiness documents are due **ten days** before the Final Status Conference.

Pursuant to Local Rule 3.25(f)(2), any motions *in limine* must be filed with timely statutory notice so as to be heard at the Final Status Conference. Any opposition or reply briefs must be filed within the time requirements of Code of Civil Procedure section 1005. A failure to comply with the requirements of Local Rule 3.25(f)(2) or Code of Civil Procedure section 1005 may result in the continuance of the Final Status Conference, the denial of late-filed motions, or the striking of late-filed opposition briefs.

November 15, 2021

2